1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GONZALO GARIBAY,

11          Petitioner,                    No. 2: 11-cv-2165 JAM KJN P

12       vs.

13   S.M. SALINAS, et al.,

14          Respondents.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2009 conviction for

19   kidnapping and assault.  Petitioner is serving a sentence of five years in state prison.

20          This action is proceeding on the original petition filed August 15, 2011.

21   Petitioner alleges that two statements by the victim and one by the prosecutor violated his right to

22   due process.  After carefully considering the record, the undersigned recommends that the

23   petition be denied.

24   II.  Standards for a Writ of Habeas Corpus

25          An application for a writ of habeas corpus by a person in custody under a

26   judgment of a state court can be granted only for violations of the Constitution or laws of the

1   United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

2   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

3   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

4              Federal habeas corpus relief is not available for any claim decided on the merits in

5   state court proceedings unless the state court's adjudication of the claim:

6              (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law, as
7              determined by the Supreme Court of the United States; or

8              (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
9              State court proceeding.

10  28 U.S.C. § 2254(d).

11             Under section 2254(d)(1), a state court decision is "contrary to" clearly

12  established United States Supreme Court precedents if it applies a rule that contradicts the

13  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

14  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at a different

15  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

16  (2000)).

17             Under the  "unreasonable application" clause of section 2254(d)(1), a federal

18  habeas court may grant the writ if the state court identifies the correct governing legal principle

19  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

20  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

21  simply because that court concludes in its independent judgment that the relevant state-court

22  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

23  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

24  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

25  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

26  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

1   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

2   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

3          The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

5   decision, "and the state court has denied relief, it may be presumed that the state court

6   adjudicated the claim on the merits in the absence of any indication or state-law procedural

7   principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

8   overcome by a showing that "there is reason to think some other explanation for the state court's

9   decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

10         Where the state court reaches a decision on the merits but provides no reasoning

11  to support its conclusion, the federal court conducts an independent review of the record.

12  "Independent review of the record is not de novo review of the constitutional issue, but rather,

13  the only method by which we can determine whether a silent state court decision is objectively

14  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

15  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

16  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

17  determine what arguments or theories supported or, . . . could have supported, the state court's

18  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

19  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

20  786.

21  III.  Factual Background

22         The opinion of the California Court of Appeal contains a factual summary of

23  petitioner's offenses.  After independently reviewing the record, the undersigned finds this

24  summary to be accurate and adopts it below.

25              In late April 2005, the victim, 18-year-old Eva Garibay, had run
            away from home and was staying with her boyfriend, Christian
26          Zendjas, and his parents. On April 29, 2005, Eva and Zendjas were

1   returning from dinner along with their friends Elizabeth Meza,
    Juan Rico, and Manuel. They were riding in Zendjas's Chevy
2   Suburban. Zendjas was driving, Eva was seated in the front
    passenger seat, and the friends were seated in the back.

3
    Suddenly, defendant's Ford Expedition cut them off and blocked
4   the street. At the same time, a Chevy Silverado pickup pulled up
    behind them to box them in. Defendant cut off Zendjas from the
5   left. Zendjas had to swerve and make several maneuvers to avoid
    being hit. If he had not hit his brakes hard, he would have hit the
6   Expedition.

7   Eva panicked when she saw the Expedition, screaming, "It's my
    dad. It's my dad." She told Zendjas to lock the doors and keep
8   driving, but Zendjas could not drive any further.

9   Defendant and Eva's father, Jaime Garibay, got out of the
    Expedition. Jaime got out from the front passenger seat, and
10  defendant got out from the driver's seat. They walked to Zendjas's
    car. Eva was scared and kept locking the car's doors. Jaime
11  approached her side of the car, and defendant approached
    Zendjas's side. Jaime knocked on the window and told Eva to get
12  out of the car. Someone inside the car unlocked the doors.

13  Jaime pulled Eva out of the car by her arm, grabbed her around her
    waist, and tried to take her to the Expedition. Eva started kicking
14  and tried to pull away. She was scared and told her father to let her
    go, but Jaime said if she did not go with him, he would cut off her
15  friends' arms. Jaime got her into the Expedition's passenger seat
    and sat next to her. Defendant got into the Expedition's driver's
16  seat on the other side of Eva, and he drove them away.

17  While this was going on, two men got out of the Silverado. They
    were dressed in blue. One had a crowbar, and the other had a
18  two-by-four. The man with the two-by-four opened one of the
    Suburban's back doors and pulled Rico out of the car. Another
19  man pulled Manuel out of the car, and Meza got out on her own.
    The man with the two-by-four told Rico, "[D]on't worry about this,
20  this is just family business."

21  A male came up to Zendjas's side of the car, opened the door, and
    tried to yank Zendjas out of the car. Zendjas tried to push the man
22  out of the car, but the man hit Zendjas in the face, cutting Zendja's
    lip. Zendjas testified defendant was not the person who hit him.
23
    After defendant got back into the Expedition, he drove Eva and her
24  father to his house, a trip of about 15 or 20 minutes. They stayed
    there for less than an hour, and then Eva's father took Eva to
25  Southern California.

26  Meanwhile, after the Expedition had left, everyone else got back

4

1
2
3
4

into their cars. Zendjas drove off, but about 45 seconds later, he
received a call from Eva's father. He told Zendjas his family would
be in danger if he called the police. The Silverado also followed
Zendjas for a while before turning away. When Zendjas got home,
he told his father what had happened, and his father called the
police.

5   (Respondent's Lodged Document 4 at 2-4.)

6   IV.  Discussion

7         A.  Claim One

8         In claim one, petitioner alleges that the trial court abused its discretion when it

9   permitted Eva to testify that she was staying with Zendjas because of "abuse allegations"

10   concerning her father.  The California Court of Appeal denied this claims for the reasons stated

11   herein:

12         A. Eva's statement regarding her father, Jaime Garibay

13
14
15

First, defendant challenges Eva's explanation as to why she was
staying with Zendjas. When the prosecutor asked Eva if she was
staying with Zendjas because of "abuse allegations with your
father," Eva replied, "Yes." The trial court overruled defendant's
objection.

16
17
18
19

This statement did not unduly prejudice defendant. The trial court
had previously ruled on a motion in limine pursuant to Evidence
Code section 352 that the statement's probative value outweighed
its prejudicial effect. The court found the statement was relevant as
it explained Eva's "state of mind, her fear of her father, why she
would not want to go with him, which certainly would be relevant
to [the] kidnapping charge."

20
21
22
23

The court also stated the phrase "'abuse allegations'" was a "very
benign statement. It's not nearly as inflammatory as stating that he
had been sexually molesting her." It was sufficiently sanitized for
the jury to learn why Eva did not want to go with Jaime as well as
to protect defendant from prejudice if the true nature of the abuse
allegations were exposed to be sexual molestation allegations.

24
25
26

The trial court's decision to admit the question and answer was not
an abuse of discretion. Under Evidence Code section 352, a trial
court in its discretion may weigh testimony to determine if its
probative value is outweighed by its prejudicial effect. We may not
overturn a trial court's exercise of discretion under Evidence Code
section 352 "in the absence of manifest abuse, upon a finding that

1        its decision was palpably arbitrary, capricious and patently absurd."
     (People v. Jennings (2000) 81 Cal.App.4th 1301, 1314.)

2

3        Here, the court weighed the evidence's prejudicial effect with its
     probative value, and it reached a reasoned decision in support of
     admitting the sanitized evidence. We agree with its conclusion.

4        The evidence was relevant to explain Eva's state of mind and her
     fear of her father, as well as to suggest a motive for her father's and

5        defendant's actions. The court did not abuse its discretion in
     admitting Eva's statement of abuse.

6

7   (Respondent's Lodged Document 4 at 4-6.)

8        The United States Supreme Court "has not yet made a clear ruling that admission

9   of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to

10  warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

11  Absent such a ruling from the Supreme Court, a federal habeas court cannot find the state court's

12  ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. §

13  2254(d)(1).  Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)).

14       Because petitioner argues that admission of Eva's testimony regarding her father's

15  abuse was irrelevant and prejudicial, his challenge to admission of this evidence must be rejected

16  as there is no clearly established Supreme Court authority in support of this claim.  See Holley,

17  568 F.3d at 1101 n.2 (finding that, although trial court's admission of irrelevant and prejudicial

18  evidence violated due process under Ninth Circuit precedent, such admission was not contrary to,

19  or an unreasonable application of, "clearly established Federal law" under section 2254(d)(1),

20  and therefore not grounds for granting federal habeas relief).

21       Even if Holley did not supply the rule for this claim, the undersigned would find,

22  for the reasons stated by the California Court of Appeal, that admission of Eva's testimony

23  regarding her father's abuse did not violate fundamental fairness.  See Estelle v. McGuire, 502

24  U.S. 62, 67, 72 (1991) (Generally, the admissibility of evidence is a matter of state law, and is

25  not reviewable in a federal habeas corpus proceeding; nevertheless, there can be habeas relief for

26  the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a

1   denial of due process.)

2          The undersigned agrees with the California Court of Appeal that the at-issue

3   sanitized testimony was relevant to explain Eva's state of mind and her fear of her father, and to

4   suggest a motive for her father's and petitioner's actions.  In addition, because the evidence

5   against petitioner was strong, it is unlikely that admission of this evidence prejudiced petitioner.

6   In finding that the evidence was strong, the undersigned relies on the factual summary contained

7   in the opinion of the California Court of Appeal.  In addition, the undersigned observes that four

8   passengers in the car that petitioner and his brother stopped all testified consistently regarding the

9   kidnapping, i.e., Eva Garibay, Christian Zendjas, Juan Rico and Elizabeth Meza.[1]   For these

10  reasons, admission of Eva's testimony regarding her father's abuse did not violate fundamental

11  fairness.

12          After conducting a review pursuant to the Anti-Terrorism and Effective Death

13  Penalty Act ("AEDPA"), the undersigned recommends that this claim be denied.

14          B.  Claim Two

15          In claim two, petitioner argues that his trial was rendered fundamentally unfair by

16  Eva's testimony regarding her relationship with petitioner.  The California Court of Appeal

17  denied this claim for the reasons stated herein:

18          When asked how she recognized the Expedition as defendant's,
            Eva stated she had seen it at his house and had seen him drive it.
19          Eva stated she saw defendant, her uncle, "[a]lmost every day."
            Growing up, she remembered him "being like locked up a lot, so
20          we wouldn't see him-." Defendant objected to Eva's statement, and
            the trial court sustained the objection, struck the statement from the
21          record, and instructed the jury to disregard it.

22          Eva's statement did not create undue prejudice because the trial
            court ordered the statement stricken from the record and instructed
23          the jury not to consider it. "It is axiomatic that the prejudicial effect
            of errors may be overcome by subsequent corrective action such as
24          the admonishment of the jury and that in such event the error may

25  _____

        [1]  A fifth passenger, who the other four passengers knew only by his first name, did not
26  testify.

1    be deemed cured." (People v. Ryan (1981) 116 Cal.App .3d 168,
2    184.) That is what occurred here.

3    (Respondent's Lodged Document 4 at 6.)

4    Petitioner filed a motion for a new trial based, in part, on Eva's testimony

5    regarding petitioner being locked up. (Court Transcript ("CT") at 264-67.) The trial court

6    denied this motion. (Reporter's Transcript ("RT") at 312-13).

7    In essence, petitioner is arguing that the trial court erred in denying his motion for

8    a new trial based on Eva's statement regarding petitioner being locked up. Petitioner suggests

9    that the instruction to the jury to disregard the statement was ineffective.

10   Due process guarantees "the fundamental elements of fairness in a criminal trial."

11   Estelle, 502 U.S. at 70 (quoting Spencer v. Texas, 385 U.S. 554, 563–64 (1967)). The McGuire

12   Court cautioned, however, that "we 'have defined the category of infractions that violate

13   "fundamental fairness" very narrowly.'" Id. at 73 (quoting Dowling v. United States, 493 U.S.

14   342, 352 (1990)). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due

15   Process Clause has limited operation." Id. (quotation and citation omitted).

16   In a similar situation, the Ninth Circuit held that a trial court's denial of a

17   defendant's motion for a mistrial based upon a prosecution witness's discussion of certain

18   improper hearsay evidence, did not undermine the "fundamental fairness" of the defendant's trial

19   in violation of due process. Hayes v. Ayers, 632 F.3d 500, 514–15 (9th Cir. 2011). The court in

20   Hayes noted that the court sustained an objection to the testimony and instructed the jury to

21   disregard it. Id.

22   For the reasons stated by the California Court of Appeal, the undersigned does not

23   find that Eva's statement regarding petitioner being locked up, which was ordered stricken,

24   violated fundamental fairness. The jury was ordered to disregard that testimony. (RT at 48.)

25   Juries are presumed to follow their instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

26   Moreover, the evidence against petitioner was strong. For this reason, it is not likely that this

1   stricken testimony had an impact on the verdict.

2          After conducting an AEDPA review, the undersigned recommends that this claim

3   be denied.

4          C.   Claim Three

5          In claim three, petitioner alleges that the prosecutor committed misconduct when

6   he questioned petitioner's behavior during Eva's cross-examination testimony.  The California

7   Court of Appeal denied this claim for the reasons stated herein:

8          Third, defendant challenges a question the prosecutor posed to the
           court concerning defendant's behavior during Eva's testimony.
9          While Eva was on cross-examination, the prosecutor asked the
           court, "Could you please admonish the defendant to stop smirking
10         and laughing at the testimony of this witness? He's done it
           repeatedly-." Defense counsel objected, stating defendant was
11         allowed to react. The court agreed with defense counsel: "As long
           as [defendant] doesn't say anything, he can do anything he wants."

12
           The prosecutor's request to the court did not create undue
13         prejudice. Defendant claims the prosecutor's remark was similar to
           one held to be harmless error in People v. Garcia (1984) 160 Cal.
14         App.3d 82, where the prosecutor in closing argument questioned
           how a defendant and a member of the audience could "'snicker and
15         jeer and laugh about'" the brutal nature of the defendant's crime
           while the victim was testifying. The Court of Appeal determined
16         the prosecutor's argument wrongly "invited the jury to speculate
           that defendant's courtroom conduct shows him to be the type of
17         person willing to participate in unlawful activity; and therefore he
           is likely to have committed the crimes in question." (Id. at p. 93.)

18
           The prosecutor's objection in this case did nothing of the sort. As
19         the trial court stated when considering this issue on defendant's
           motion for new trial, "[t]he D.A. is entitled to object to conduct by
20         a defendant that can have an effect on a witness. Now, the jury is
           instructed not to make a decision based on anything that happens in
21         court such as that by the defendant. So I don't-I don't think that
           was significant. And the D.A. did not comment on it during the
22         argument...."

23         Indeed, in this case, the prosecutor did not mention this incident
           again. However, defense counsel raised it in his closing argument.
24         He tried to explain away defendant's behavior and asked the jurors
           if any of them saw defendant smirking. This argument brought the
25         incident to the juror's minds much stronger than the prosecution's
           objection to the court. The objection did not create undue
26         prejudice.

9

1  (Respondent's Lodged Document 4 at 6-8.)

2          On habeas corpus review, the narrow standard of due process applies to claims of

3  prosecutorial misconduct.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A prosecutor's

4  error or misconduct does not, per se, violate a criminal defendant's constitutional rights.  See

5  Jeffries v. Blodgett, 5 F.3d 1180, 1191 (1993) (citing Darden, 477 U.S. at 181; Campbell v.

6  Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  A defendant's due process rights are violated

7  only if the error or misconduct renders the trial fundamentally unfair.  Darden, 477 U.S. at 181.

8          The question to be resolved is whether the alleged misconduct "'so infected the

9  trial with unfairness as to make the resulting conviction a denial of due process.'"  Hall v.

10  Whitley, 935 F.2d 164, 165 (9th Cir. 1991) (quoting Donnelly v. DeChritoforo, 416 U.S. 637,

11  643 (1974)).  In order to determine whether prosecutorial misconduct occurred, it is necessary to

12  examine the entire proceedings and place the prosecutor's conduct in context.  Greer v. Miller,

13  483 U.S. 756, 765–66 (1987).  Factors to be considered in determining whether habeas corpus

14  relief is warranted include whether the prosecutor manipulated or misstated the evidence;

15  whether his comments implicated other specific rights of the accused; whether the objectionable

16  content was invited or provoked by defense counsel's argument; whether the trial court

17  admonished the jurors; and the weight of the evidence against the defendant.  Darden, 477 U.S.

18  at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Relief is limited to cases

19  in which a petitioner can establish that the misconduct resulted in actual prejudice.  Johnson v.

20  Sublett, 63 F.3d 926, 930 (1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993)). In

21  other words, prosecutorial misconduct violates due process when it has a substantial and

22  injurious effect or influence in determining the jury's verdict.  Ortiz–Sandoval v. Gomez, 81 F.3d

23  891, 899 (9th Cir. 1996)

24          For the reasons stated by the California Court of Appeal, the undersigned finds

25  that the prosecutor's objection to petitioner's behavior did not violate due process.  The

26  prosecutor's objection did not constitute evidence, and the jury was instructed to consider only

1    evidence in deciding petitioner's guilt.  (RT at 272.)  As noted above, juries are presumed to

2    follow their instructions.  Richardson v. Marsh, 481 U.S. 200, 211 (1987).   Moreover, because

3    the evidence against petitioner was strong, it is unlikely that this objection had an impact on the

4    verdict.

5                        After conducting an AEDPA review, the undersigned recommends that this claim

6    be denied.

7                        D.  Claim Four

8                        Finally, petitioner alleges that admission of the three statements discussed above

9    constituted cumulative error.  The California Court of Appeal denied this claim for the reasons

10   stated herein:

11                        Even if we were to find error on account of any or all of these
                          statements, we would not conclude that absent the errors,
12                        defendant would have received a more favorable result. (People v.
                          Watson (1956) 46 Cal.2d 818, 835-837.) Nor would we conclude
13                        the alleged errors violated the constitutional standard of review.
                          (Chapman v. California (1967) 386 U.S. 18, 24.) The evidence
14                        against defendant was overwhelming. There is no doubt that he
                          drove his Expedition, blocked off Zendjas's car, and participated in
15                        Eva's kidnapping. The jury would have so concluded even if the
                          alleged errors had not occurred. Eva's and the prosecutor's
16                        statements did not result in prejudicial error.

17   (Respondent's Lodged Document 4 at 8.)

18                        The combined effect of multiple errors may give rise to a due process violation if

19   the trial was rendered fundamentally unfair, even where each error considered individually would

20   not require reversal. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007). The fundamental

21   question in determining whether the combined effect of trial errors violated a defendant's due

22   process rights is whether the errors rendered the criminal defense "far less persuasive" thereby

23   having a "substantial and injurious effect or influence" on the jury's verdict.  See id. at 927

24   (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Cumulative error is more likely to be

25   found when the government's case is weak.  See United States v. Frederick, 78 F.3d 1370, 1381

26   (9th Cir. 1996).

1        As discussed above, the undersigned finds that no error occurred in connection

2   with any of the three at-issue statements.  In addition, the government's case against petitioner

3   was strong.  For these reasons, petitioner's claim alleging cumulative error is without merit.

4        After conducting an AEDPA review, the undersigned recommends that this claim

5   be denied.

6        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

7   a writ of habeas corpus be denied.

8        These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

10  one days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

13  objections, he shall also address whether a certificate of appealability should issue and, if so, why

14  and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

15  the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

16  2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

17  service of the objections.  The parties are advised that failure to file objections within the

18  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

19  F.2d 1153 (9th Cir. 1991).

20  DATED:  November 18, 2011

21

22                                                    _____
                                                      KENDALL J. NEWMAN
23                                                    UNITED STATES MAGISTRATE JUDGE

24  gar2165.157

25

26

                                           12