Case 2:11-cv-02165-JAM-KJN Document 13 Filed 11/21/11 Page 1 of 12

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GONZALO GARIBAY,

    Petitioner,                   No. 2: 11-cv-2165 JAM KJN P

    vs.

S.M. SALINAS, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 conviction for kidnapping and assault. Petitioner is serving a sentence of five years in state prison.

        This action is proceeding on the original petition filed August 15, 2011. Petitioner alleges that two statements by the victim and one by the prosecutor violated his right to due process. After carefully considering the record, the undersigned recommends that the petition be denied.

II. Standards for a Writ of Habeas Corpus

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the

United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief

so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

III. Factual Background

The opinion of the California Court of Appeal contains a factual summary of petitioner's offenses. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it below.

> In late April 2005, the victim, 18-year-old Eva Garibay, had run away from home and was staying with her boyfriend, Christian Zendjas, and his parents. On April 29, 2005, Eva and Zendjas were

returning from dinner along with their friends Elizabeth Meza, Juan Rico, and Manuel. They were riding in Zendjas's Chevy Suburban. Zendjas was driving, Eva was seated in the front passenger seat, and the friends were seated in the back.

Suddenly, defendant's Ford Expedition cut them off and blocked the street. At the same time, a Chevy Silverado pickup pulled up behind them to box them in. Defendant cut off Zendjas from the left. Zendjas had to swerve and make several maneuvers to avoid being hit. If he had not hit his brakes hard, he would have hit the Expedition.

Eva panicked when she saw the Expedition, screaming, "It's my dad. It's my dad." She told Zendjas to lock the doors and keep driving, but Zendjas could not drive any further.

Defendant and Eva's father, Jaime Garibay, got out of the Expedition. Jaime got out from the front passenger seat, and defendant got out from the driver's seat. They walked to Zendjas's car. Eva was scared and kept locking the car's doors. Jaime approached her side of the car, and defendant approached Zendjas's side. Jaime knocked on the window and told Eva to get out of the car. Someone inside the car unlocked the doors.

Jaime pulled Eva out of the car by her arm, grabbed her around her waist, and tried to take her to the Expedition. Eva started kicking and tried to pull away. She was scared and told her father to let her go, but Jaime said if she did not go with him, he would cut off her friends' arms. Jaime got her into the Expedition's passenger seat and sat next to her. Defendant got into the Expedition's driver's seat on the other side of Eva, and he drove them away.

While this was going on, two men got out of the Silverado. They were dressed in blue. One had a crowbar, and the other had a two-by-four. The man with the two-by-four opened one of the Suburban's back doors and pulled Rico out of the car. Another man pulled Manuel out of the car, and Meza got out on her own. The man with the two-by-four told Rico, "[D]on't worry about this, this is just family business."

A male came up to Zendjas's side of the car, opened the door, and tried to yank Zendjas out of the car. Zendjas tried to push the man out of the car, but the man hit Zendjas in the face, cutting Zendja's lip. Zendjas testified defendant was not the person who hit him.

After defendant got back into the Expedition, he drove Eva and her father to his house, a trip of about 15 or 20 minutes. They stayed there for less than an hour, and then Eva's father took Eva to Southern California.

Meanwhile, after the Expedition had left, everyone else got back

4

into their cars. Zendjas drove off, but about 45 seconds later, he received a call from Eva's father. He told Zendjas his family would be in danger if he called the police. The Silverado also followed Zendjas for a while before turning away. When Zendjas got home, he told his father what had happened, and his father called the police.

(Respondent's Lodged Document 4 at 2-4.)

IV. Discussion

    A. Claim One

In claim one, petitioner alleges that the trial court abused its discretion when it permitted Eva to testify that she was staying with Zendjas because of "abuse allegations" concerning her father. The California Court of Appeal denied this claims for the reasons stated herein:

    A. Eva's statement regarding her father, Jaime Garibay

First, defendant challenges Eva's explanation as to why she was staying with Zendjas. When the prosecutor asked Eva if she was staying with Zendjas because of "abuse allegations with your father," Eva replied, "Yes." The trial court overruled defendant's objection.

This statement did not unduly prejudice defendant. The trial court had previously ruled on a motion in limine pursuant to Evidence Code section 352 that the statement's probative value outweighed its prejudicial effect. The court found the statement was relevant as it explained Eva's "state of mind, her fear of her father, why she would not want to go with him, which certainly would be relevant to [the] kidnapping charge."

The court also stated the phrase "'abuse allegations'" was a "very benign statement. It's not nearly as inflammatory as stating that he had been sexually molesting her." It was sufficiently sanitized for the jury to learn why Eva did not want to go with Jaime as well as to protect defendant from prejudice if the true nature of the abuse allegations were exposed to be sexual molestation allegations.

The trial court's decision to admit the question and answer was not an abuse of discretion. Under Evidence Code section 352, a trial court in its discretion may weigh testimony to determine if its probative value is outweighed by its prejudicial effect. We may not overturn a trial court's exercise of discretion under Evidence Code section 352 "in the absence of manifest abuse, upon a finding that

5

> its decision was palpably arbitrary, capricious and patently absurd." (People v. Jennings (2000) 81 Cal.App.4th 1301, 1314.)
>
> Here, the court weighed the evidence's prejudicial effect with its probative value, and it reached a reasoned decision in support of admitting the sanitized evidence. We agree with its conclusion. The evidence was relevant to explain Eva's state of mind and her fear of her father, as well as to suggest a motive for her father's and defendant's actions. The court did not abuse its discretion in admitting Eva's statement of abuse.

(Respondent's Lodged Document 4 at 4-6.)

The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a ruling from the Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. § 2254(d)(1). Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)).

Because petitioner argues that admission of Eva's testimony regarding her father's abuse was irrelevant and prejudicial, his challenge to admission of this evidence must be rejected as there is no clearly established Supreme Court authority in support of this claim. See Holley, 568 F.3d at 1101 n.2 (finding that, although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under section 2254(d)(1), and therefore not grounds for granting federal habeas relief).

Even if Holley did not supply the rule for this claim, the undersigned would find, for the reasons stated by the California Court of Appeal, that admission of Eva's testimony regarding her father's abuse did not violate fundamental fairness. See Estelle v. McGuire, 502 U.S. 62, 67, 72 (1991) (Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding; nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a

denial of due process.)

The undersigned agrees with the California Court of Appeal that the at-issue sanitized testimony was relevant to explain Eva's state of mind and her fear of her father, and to suggest a motive for her father's and petitioner's actions. In addition, because the evidence against petitioner was strong, it is unlikely that admission of this evidence prejudiced petitioner. In finding that the evidence was strong, the undersigned relies on the factual summary contained in the opinion of the California Court of Appeal. In addition, the undersigned observes that four passengers in the car that petitioner and his brother stopped all testified consistently regarding the kidnapping, i.e., Eva Garibay, Christian Zendjas, Juan Rico and Elizabeth Meza.[1] For these reasons, admission of Eva's testimony regarding her father's abuse did not violate fundamental fairness.

After conducting a review pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the undersigned recommends that this claim be denied.

B. Claim Two

In claim two, petitioner argues that his trial was rendered fundamentally unfair by Eva's testimony regarding her relationship with petitioner. The California Court of Appeal denied this claim for the reasons stated herein:

> When asked how she recognized the Expedition as defendant's, Eva stated she had seen it at his house and had seen him drive it. Eva stated she saw defendant, her uncle, "[a]lmost every day." Growing up, she remembered him "being like locked up a lot, so we wouldn't see him-." Defendant objected to Eva's statement, and the trial court sustained the objection, struck the statement from the record, and instructed the jury to disregard it.
>
> Eva's statement did not create undue prejudice because the trial court ordered the statement stricken from the record and instructed the jury not to consider it. "It is axiomatic that the prejudicial effect of errors may be overcome by subsequent corrective action such as the admonishment of the jury and that in such event the error may

---

[1] A fifth passenger, who the other four passengers knew only by his first name, did not testify.

7

1                 be deemed cured." (People v. Ryan (1981) 116 Cal.App .3d 168,
2                 184.) That is what occurred here.

3 (Respondent's Lodged Document 4 at 6.)

4        Petitioner filed a motion for a new trial based, in part, on Eva's testimony
5 regarding petitioner being locked up.  (Court Transcript ("CT") at 264-67.)  The trial court
6 denied this motion.  (Reporter's Transcript ("RT") at 312-13).

7        In essence, petitioner is arguing that the trial court erred in denying his motion for
8 a new trial based on Eva's statement regarding petitioner being locked up.  Petitioner suggests
9 that the instruction to the jury to disregard the statement was ineffective.

10        Due process guarantees "the fundamental elements of fairness in a criminal trial."
11 Estelle, 502 U.S. at 70 (quoting Spencer v. Texas, 385 U.S. 554, 563–64 (1967)).  The McGuire
12 Court cautioned, however, that "we 'have defined the category of infractions that violate
13 "fundamental fairness" very narrowly.'"  Id. at 73 (quoting Dowling v. United States, 493 U.S.
14 342, 352 (1990)).  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due
15 Process Clause has limited operation."  Id. (quotation and citation omitted).

16        In a similar situation, the Ninth Circuit held that a trial court's denial of a
17 defendant's motion for a mistrial based upon a prosecution witness's discussion of certain
18 improper hearsay evidence, did not undermine the "fundamental fairness" of the defendant's trial
19 in violation of due process.  Hayes v. Ayers, 632 F.3d 500, 514–15 (9th Cir. 2011).  The court in
20 Hayes noted that the court sustained an objection to the testimony and instructed the jury to
21 disregard it.  Id.

22        For the reasons stated by the California Court of Appeal, the undersigned does not
23 find that Eva's statement regarding petitioner being locked up, which was ordered stricken,
24 violated fundamental fairness.  The jury was ordered to disregard that testimony.  (RT at 48.)
25 Juries are presumed to follow their instructions.  Richardson v. Marsh, 481 U.S. 200, 211 (1987).
26 Moreover, the evidence against petitioner was strong.  For this reason, it is not likely that this

stricken testimony had an impact on the verdict.

After conducting an AEDPA review, the undersigned recommends that this claim be denied.

### C. Claim Three

In claim three, petitioner alleges that the prosecutor committed misconduct when he questioned petitioner's behavior during Eva's cross-examination testimony. The California Court of Appeal denied this claim for the reasons stated herein:

> Third, defendant challenges a question the prosecutor posed to the court concerning defendant's behavior during Eva's testimony. While Eva was on cross-examination, the prosecutor asked the court, "Could you please admonish the defendant to stop smirking and laughing at the testimony of this witness? He's done it repeatedly-." Defense counsel objected, stating defendant was allowed to react. The court agreed with defense counsel: "As long as [defendant] doesn't say anything, he can do anything he wants."
>
> The prosecutor's request to the court did not create undue prejudice. Defendant claims the prosecutor's remark was similar to one held to be harmless error in People v. Garcia (1984) 160 Cal. App.3d 82, where the prosecutor in closing argument questioned how a defendant and a member of the audience could "'snicker and jeer and laugh about'" the brutal nature of the defendant's crime while the victim was testifying. The Court of Appeal determined the prosecutor's argument wrongly "invited the jury to speculate that defendant's courtroom conduct shows him to be the type of person willing to participate in unlawful activity; and therefore he is likely to have committed the crimes in question." (Id. at p. 93.)
>
> The prosecutor's objection in this case did nothing of the sort. As the trial court stated when considering this issue on defendant's motion for new trial, "[t]he D.A. is entitled to object to conduct by a defendant that can have an effect on a witness. Now, the jury is instructed not to make a decision based on anything that happens in court such as that by the defendant. So I don't-I don't think that was significant. And the D.A. did not comment on it during the argument...."
>
> Indeed, in this case, the prosecutor did not mention this incident again. However, defense counsel raised it in his closing argument. He tried to explain away defendant's behavior and asked the jurors if any of them saw defendant smirking. This argument brought the incident to the juror's minds much stronger than the prosecution's objection to the court. The objection did not create undue prejudice.

(Respondent's Lodged Document 4 at 6-8.)

On habeas corpus review, the narrow standard of due process applies to claims of prosecutorial misconduct. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A prosecutor's error or misconduct does not, per se, violate a criminal defendant's constitutional rights. See Jeffries v. Blodgett, 5 F.3d 1180, 1191 (1993) (citing Darden, 477 U.S. at 181; Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). A defendant's due process rights are violated only if the error or misconduct renders the trial fundamentally unfair. Darden, 477 U.S. at 181.

The question to be resolved is whether the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Hall v. Whitley, 935 F.2d 164, 165 (9th Cir. 1991) (quoting Donnelly v. DeChritoforo, 416 U.S. 637, 643 (1974)). In order to determine whether prosecutorial misconduct occurred, it is necessary to examine the entire proceedings and place the prosecutor's conduct in context. Greer v. Miller, 483 U.S. 756, 765–66 (1987). Factors to be considered in determining whether habeas corpus relief is warranted include whether the prosecutor manipulated or misstated the evidence; whether his comments implicated other specific rights of the accused; whether the objectionable content was invited or provoked by defense counsel's argument; whether the trial court admonished the jurors; and the weight of the evidence against the defendant. Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Relief is limited to cases in which a petitioner can establish that the misconduct resulted in actual prejudice. Johnson v. Sublett, 63 F.3d 926, 930 (1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993)). In other words, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. Ortiz–Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996)

For the reasons stated by the California Court of Appeal, the undersigned finds that the prosecutor's objection to petitioner's behavior did not violate due process. The prosecutor's objection did not constitute evidence, and the jury was instructed to consider only

evidence in deciding petitioner's guilt. (RT at 272.) As noted above, juries are presumed to follow their instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Moreover, because the evidence against petitioner was strong, it is unlikely that this objection had an impact on the verdict.

After conducting an AEDPA review, the undersigned recommends that this claim be denied.

### D. Claim Four

Finally, petitioner alleges that admission of the three statements discussed above constituted cumulative error. The California Court of Appeal denied this claim for the reasons stated herein:

> Even if we were to find error on account of any or all of these statements, we would not conclude that absent the errors, defendant would have received a more favorable result. (People v. Watson (1956) 46 Cal.2d 818, 835-837.) Nor would we conclude the alleged errors violated the constitutional standard of review. (Chapman v. California (1967) 386 U.S. 18, 24.) The evidence against defendant was overwhelming. There is no doubt that he drove his Expedition, blocked off Zendjas's car, and participated in Eva's kidnapping. The jury would have so concluded even if the alleged errors had not occurred. Eva's and the prosecutor's statements did not result in prejudicial error.

(Respondent's Lodged Document 4 at 8.)

The combined effect of multiple errors may give rise to a due process violation if the trial was rendered fundamentally unfair, even where each error considered individually would not require reversal. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007). The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive" thereby having a "substantial and injurious effect or influence" on the jury's verdict. See id. at 927 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Cumulative error is more likely to be found when the government's case is weak. See United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996).

As discussed above, the undersigned finds that no error occurred in connection with any of the three at-issue statements. In addition, the government's case against petitioner was strong. For these reasons, petitioner's claim alleging cumulative error is without merit.

After conducting an AEDPA review, the undersigned recommends that this claim be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 18, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gar2165.157